[Civ. No. 5317.   Fourth Dist.   Mar. 30, 1956.]

VIVIAN FREE, Appellant, v. RAY FURR et al., Respondents.

Baker, Palmer, Wall & Raymond for Appellant.

Borton, Petrini, Conron & Brown for Respondents.

CONLEY, J. pro tem.*—The plaintiff, Vivian Free, sued Ray Furr and his wife, Bette Furr, for damages resulting from personal injuries sustained by her when, after a night visit at their home, she fell on the concrete stairway leading from the premises to the street level. She alleged that, unknown to her, defendants negligently permitted the steps to be in a broken, unlighted and unsafe condition, with loose pieces of concrete material thereon. Although she sustained fractures of the right wrist and left elbow, a severe cut and blow to her chin and additional physical injuries, and the special damages alone totaled $1,802.71, the jury brought in a verdict for only $2,000. Plaintiff filed a cost bill within five days after the verdict (Code Civ. Proc., § 1033).

Defendants, after due notice, made a motion for judgment notwithstanding the verdict (Code Civ. Proc., § 629), which was granted, the judgment thereon being filed and entered on March 23, 1955. No notice of the entry of the judgment having been served, plaintiff filed a notice of intention to move for a new trial on May 18, 1955, and on May 19, a notice of appeal from the judgment. When the motion for new trial came on for argument on June 1, 1955, the defendants objected to a hearing "on the ground that time expired for hearing said motion." The court sustained the objection and refused to rule on the motion for a new trial.

Appellant urges on this appeal that the jury's verdict is sustained by substantial evidence and that the judgment notwithstanding the verdict, therefore, must be set aside; that plaintiff's judgment for costs should be reinstated; and that the trial court's refusal to hear her motion for a new trial was erroneous.

At the outset, we can quickly dispose of the suggestion of respondents that the appeal was not effectively lodged because the notice of appeal was filed more than 60 days

*Assigned by Chairman of Judicial Council.

after the entry of the minute order granting the motion for judgment notwithstanding the verdict, although admittedly less than 60 days after the signing and entry of the judgment itself. Section 963 of the Code of Civil Procedure authorizes an appeal from a final judgment. The same section of the code permits an appeal from an order denying a motion for judgment notwithstanding the verdict but not from an order granting such a motion. (*Scott* v. *George A. Fuller Co.*, 41 Cal.App.2d 501 [107 P.2d 55].) This statutory distinction makes it obvious that the present appeal must be and is from the judgment itself. The filing of the notice of appeal was timely and effective.

The proper technique for a trial judge to employ in passing on a motion for judgment notwithstanding the verdict being identical with that required on a motion for nonsuit or directed verdict (*Estate of Green*, 25 Cal.2d 535, 546 [154 P.2d 692]) is well expressed in *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108, 117-118 [291 P. 184]:

"Unless it can be said that, as a matter of law, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal or a trial court set it aside, a court is not justified in taking a case from a jury and itself rendering the decision. (*Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224 [263 P. 799].) Such a motion is in the nature of a demurrer to the evidence, and is governed by practically the same rules, and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. (*Butler-Veitch, Inc.* v. *Barnard*, 77 Cal.App. 709 [247 P. 597].) Even though a court might be justified in granting a new trial it would not be justified in directing a verdict on the same evidence. (*Estate of Caspar*, 172 Cal. 147 [155 P. 631].) The power of a court in passing upon such motions is strictly limited. It has no power to weigh the evidence, but is bound to view it in the most favorable light in support of the verdict. The right of a court to direct a verdict is the same as the right of a court to grant a nonsuit. This can be done only when, disregarding conflicting evidence and giving plaintiffs' evidence all the value to which it is legally entitled, including every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a

verdict in favor of plaintiff if such verdict was given. (*Newson v. Hawley,* 205 Cal. 188 [270 P. 364].) If, in the opinion of the court, the evidence is unreliable, it is its duty to grant a new trial, and it may grant such trial even where there is substantial evidence to sustain the verdict, if it believes that the evidence preponderates against the verdict.''

The Supreme Court in *Estate of Lances,* 216 Cal. 397, 401 [14 P.2d 768], after quoting from the opinion in the Hunt case, comments:

''In other words, the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict.''

As we proceed to determine the question as to whether there is substantial evidence to establish plaintiff's case (*Hall v. Osell,* 102 Cal.App.2d 849 [228 P.2d 293]), we shall apply the foregoing rule and give the plaintiff the benefit, not only of all direct evidence supporting her claim, but also of all inferences that might legitimately be drawn in her favor from any of the testimony produced by either party.

The plaintiff, Vivian Free, and the defendant, Bette Furr, were friends and neighbors, residing in the city of Taft. During business hours, plaintiff was comanager of a laundry and dry cleaning establishment and the Furrs were regular customers. On the night of the accident, Mrs. Free went to visit Mrs. Furr, taking a piece of cake as a present. She was expected and was welcome as arrangements had been made that afternoon for the visit. The ladies had stopped their cars in the street to exchange greetings and Mrs. Furr ''remarked about the cake. She remarked she would like some and I said I would bring it up and she said she would be waiting for me.'' In the past there had been two or three visits at the Furr home for purely social reasons. On this occasion the plaintiff remained only about 10 or 15 minutes and the talk was wholly neighborly and social in character, except that when Mrs. Free started to go home, Mrs. Furr asked her to send her laundry driver to the Furr home on the following day as she had ''a lot'' of dry cleaning to be done and ''that would save her a telephone call.'' Mrs. Free readily assented to the request. She testified, however,

that she did not go visiting on this occasion for the purpose of transacting any business and that the talk about dry cleaning was purely an afterthought and accommodation to Mrs. Furr. ██ ██ As it is the purpose for which a person is on the premises of another that is the test of whether he is an invitee or mere licensee (*Popejoy* v. *Hannon,* 37 Cal.2d 159, 169 [231 P.2d 484]), and as a social guest is only a licensee (*Ashley* v. *Jones,* 126 Cal.App.2d 328, 332 [271 P.2d 918]; *Comeau* v. *Comeau,* 285 Mass. 578 [189 N.E. 588, 92 A.L.R. 1002]; 38 Am.Jur., p. 778), we necessarily reach the conclusion that the plaintiff was a mere gratuitous licensee at the time of her injury, and not a business visitor or invitee.

██ The general rule defining the duty owed by the owner of premises to a licensee has been frequently stated to be only to refrain from inflicting wanton or wilful injury. While that stringent rule has been modified to permit a recovery for active conduct constituting negligence, it is still the law of California that a licensee must take the premises as he finds them insofar as any alleged defective condition thereof is concerned. (*Palmquist* v. *Mercer,* 43 Cal.2d 92, 102 [272 P.2d 26]; *Oettinger* v. *Stewart,* 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221]; *Demmon* v. *Smith,* 58 Cal.App.2d 425, 432 [136 P.2d 660]; *Saba* v. *Jacobs,* 130 Cal.App.2d 717, 718 [279 P.2d 826].) If, however, the owners of the premises know, as they did in this case, that the licensee is present, they must not be guilty of negligent active conduct as distinguished from condition of the premises which results in injury to the licensee. (*Oettinger* v. *Stewart, supra,* 24 Cal.2d 133, 138; *Davis* v. *Silverwood,* 116 Cal.App.2d 39, 41 [253 P.2d 83].)

Can it be said that there was active conduct amounting to negligence on the part of the defendants? Let us examine the record. The Furr home, as is shown by the pictures in evidence, is at a considerable elevation above the level of the dead-end street upon which the defendants' home is located. A person leaving the home first steps upon a platform by the service porch, then goes down several steps to a sidewalk, which has two downward steps along its course, and finally reaches the top of the garage stairway, consisting of nine steep and narrow steps, leading down to the street level. There is no handrailing. The stairs are made of concrete and the top step where Mrs. Free lost her footing was somewhat roughened and cracked. While there is an electric light near the top of this last flight of steps, it was not on when the plaintiff fell.

Mr. Furr told the attending doctor after the accident that he had intended to put a handrail on the stairs for some time.

Mrs. Free left the Furr house by the rear entrance, carrying the empty cake plate. At the top of the garage flight, she testified, "I took my first step down with my right foot and came in contact with a small piece of gravel that immediately started my foot rolling. . . . I have large feet and my footstep started to roll and I immediately started to fall and I fell sort of sideways on both knees, grasping for something to hang onto because in a split second you can tell there's going to be a bad fall, and I got down on these knees and plunged head-first to the bottom of the steps." On cross-examination, the plaintiff was asked: "As you stepped off with your right foot, your foot apparently got on top of some little pebble?" and she answered affirmatively.

With respect to plaintiff's injuries, it is sufficient to note that they were severe and that if plaintiff was entitled to recover at all, she might well have been awarded damages substantially in excess of the $2,000 verdict.

█ The fact that the darkness of the night increased the hazard involved in using the premises did not increase the licensee's rights or enlarge the licensor's duties with respect to the condition of the premises. (*Reardon* v. *Thompson*, 149 Mass. 267 [21 N.E. 369]; *Habina* v. *Twin City Gen. Elec. Co.*, 150 Mich. 41 [113 N.W. 586, 13 L.R.A.N.S. 1126]; *Elliman* v. *Gombar*, 86 Ohio App. 352 [91 N.E.2d 801]; 65 C.J.S. Negligence, § 38.)

█ It seems clear that the injury to plaintiff resulted wholly from the presence of a pebble or a small piece of gravel on one of the steps, coupled with the absence of a handrail. The absence of a handrail was a passive condition. There was no evidence that the defendants knew, or should have known, that the pebble was there. No active conduct or negligence on the part of the defendants was shown by the evidence. The conditions shown were wholly passive and, under the law, the plaintiff was obliged to accept the premises as she found them.

Of the three cases cited by plaintiff in support of her claim that there may have been active conduct constituting negligence, *Herold* v. *P. H. Mathews Paint House*, 39 Cal.App. 489 [179 P. 414], holds that an implied invitation to a woman licensee in raising the gate of a freight elevator, coupled with a failure to warn her that the elevator was not at that floor, might be considered to constitute some evidence of active

negligence. ''The duty to warn of unusual dangers'' in *Fernandez* v. *Consolidated Fisheries, Inc.*, 98 Cal.App.2d 91, 96 [219 P.2d 73], refers to situations in the nature of a trap. (*Ashley* v. *Jones, supra,* 126 Cal.App.2d 328.) And in *Laidlaw* v. *Perozzi,* 130 Cal.App.2d 169 [278 P.2d 523], the defendant had committed an overt act by previously unfastening the bolt on the door through which the plaintiff fell.

That there exist differences of opinion as to the wisdom of the stringent and rigid rules above referred to with reference to the rights of a social guest or licensee may be conceded (Rest., Torts, 342; *Fernandez* v. *Consolidated Fisheries, Inc., supra,* 98 Cal.App.2d 91, 96; concurring opinion of Carter, J. in *Palmquist* v. *Mercer, supra,* 43 Cal.2d 93, 105), but under the doctrine of *stare decisis,* this court must adhere to these prevailing rules of law. Accordingly, we hold that there is no substantial evidence upon which the verdict in favor of the plaintiff can be justified and that the trial judge correctly granted defendants' motion for judgment notwithstanding the verdict.

The foregoing conclusion automatically disposes of appellant's contention that the trial court's disallowance of costs to plaintiff should be disapproved. ▇ Plaintiff cannot recover costs on a judgment for defendants.

▇ After the entry of the judgment notwithstanding the verdict, the plaintiff filed a notice of intention to move for a new trial. When the motion came on for hearing, counsel for defendants objected to its being heard on the claim that the time for ruling on it had expired. The court sustained this objection. The holding was clearly erroneous for, notwithstanding the filing of an appeal, the court retained jurisdiction to rule on the motion for a new trial. (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 807 [117 P.2d 841]), and as the 60-day period within which a motion for new trial must be determined or deemed denied runs from the date of service of the notice of entry of judgment, or if none, as in this case, from the date of filing of the notice of intention to move for a new trial, the court should have decided the motion on its merits. Plaintiff's only remedy, however, was to apply to this court for a writ of mandate ordering the trial judge to proceed to hear the motion for, notwithstanding the erroneous ruling, the time within which a motion for new trial could be granted expired under the specific provisions of section 660 of the Code of Civil Procedure 60 days after May 18, 1955.

There is nothing which this court can now do to reinstate or revive the motion in the court below.

The denial by operation of law of the motion for new trial is reviewable on this appeal. ▮ For while an order denying a motion for new trial is not appealable (Code Civ. Proc., § 963, subd. 2; *Hamasaki* v. *Flotho,* 39 Cal.2d 602, 608 [248 P.2d 910]), the propriety of the ruling may be reviewed upon an appeal from the judgment (*Litvinuk* v. *Litvinuk,* 27 Cal.2d 38, 42 [162 P.2d 8]), and this is true even though the motion for new trial was denied merely by operation of law, as in this case. (*Caldwell* v. *Caldwell,* 80 Cal.App.2d 378, 384 [182 P.2d 258]; *Bramble* v. *McEwan,* 40 Cal.App.2d 400, 416 [104 P.2d 1054].)

Our attention has not been called by appellant to any adverse evidentiary ruling or other alleged error committed during the progress of the trial and in view of our conclusion concerning the nature and effect of the evidence considered as a whole, we find no ground to order a reversal of the judgment.

Accordingly, the judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 23, 1956. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.